UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KEVIN KNASEL, individually,

    Plaintiff,

v.

SFW PARTNERS, LLC, a Missouri limited liability company,

    Defendant.

Case No.

# COMPLAINT

Plaintiff, KEVIN KNASEL, individually ("Plaintiff"), by and through their undersigned counsel, and pursuant to the Florida Rules of Civil Procedure, bring this Complaint against Defendant, SFW PARTNERS, LLC, a Missouri limited liability company, ("Defendant"), and state as follows:

## PARTIES

1. Plaintiff, Kevin Knasel ("Mr. Knasel"), is an individual domiciled in Naples, Collier County, Florida.

2. Defendant SFW Partners, LLC ("SFW") is a Missouri limited liability company, licensed to provide accounting and tax preparation services as a certified public accounting ("CPA") firm, with its principal place of business in St. Louis, Missouri.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and there is complete diversity between Plaintiff and Defendant.

4. Venue is proper in the Middle District of Florida, Fort Myers Division, because a substantial part of the events and damages giving rise to this action occurred in this District, including damages incurred by Knasel, a Florida resident, in his individual capacity.

## GENERAL ALLEGATIONS

5. Plaintiff engaged Defendant, a licensed CPA firm, to provide tax and attest services for Mr. Knasel.

6. Defendant routinely prepared federal and state tax returns, audits, and reviews for these entities, as confirmed by written engagement letters issued by SFW on an annual basis, and invoices issued more regularly and paid upon receipt. True and correct copies of the engagement agreements are attached hereto as **Exhibit "A."**

7. Although the engagement letters purported to limit scope, SFW in practice undertook responsibility for the full suite of tax services for all entities owned by Knasel, including preparation and filing of federal and state returns, audits, and reviews.

8. Defendant holds itself out as highly experienced in tax strategy, compliance, and attest functions, having provided such services for more than fifty-five (55) years.

9. The provision of tax strategy, compliance, and attest functions each require extensive academic training and licensing by a governmental entity.

10. Defendant claims that its individual "team members have expertise in tax strategies and compliance as well as attest functions, including audits, reviews, compilations, and specialized industry procedures."

11. At all times relevant to this Complaint and up until February 2025, Plaintiff did not maintain expertise in tax strategies, compliance, or attest functions, or employed a person who maintained expertise in such tax strategies, compliance, or attest functions.

12. Plaintiff therefore relied upon SFW's specialized knowledge and professional obligations as a licensed CPA firm to perform these services competently, diligently, skillfully, with reasonable expediency, and in accordance with professional standards.

13. SFW breached these duties through repeated instances of professional negligence, including failing to timely complete its services, misdirecting communications, failing to properly calculate estimated tax obligations, failing to properly report ownership percentages after reviewing the associated

documentation, failing to update addresses, failing to properly report and include business entities on tax returns, and failing to timely file tax returns. In the aggregate, these failures resulted in substantial penalties, overpayments, and exposure to additional liability.

14. Branson's Nantucket, LLC ("Branson's Nantucket"), one of Mr. Knasel's affiliated entities, was also a significant subject of SFW's work. SFW was engaged to perform audits and prepare related federal tax filings for Branson's Nantucket. Notwithstanding explicit instructions from Mr. Knasel, SFW repeatedly misdirected audit-related communications and failed to complete the audit before the tax filing deadline.

15. SFW instead filed a draft tax return and later charged Branson's Nantucket for amendments, causing the entity to incur substantial costs and penalties. These failures in turn directly increased Mr. Knasel's individual tax liabilities given his ownership interests.

16. Moreover, SFW prepared gift tax returns for Mr. Knasel relating to transfers of nonvoting stock in Branson's Nantucket but failed to apply standard valuation discounts. As such, Mr. Knasel was exposed to unnecessary future estate tax liability.

17. Further, SFW misreported Mr. Knasel's ownership interest in Branson's Nantucket as only one percent (1%), despite his retention of full

economic interest, which caused millions of dollars in overpaid federal income taxes on distributions in 2022 and 2023.

18. The total damages from SFW's negligence exceed $9,604,548.41, exclusive of attorneys' fees, and are projected to increase as additional liabilities accrue.

19. All conditions precedent to the filing of this action have been performed, waived, or otherwise satisfied.

20. Plaintiff has retained the law firm of Boatman Ricci and is obligated to pay it a reasonable fee.

### COUNT I – PROFESSIONAL NEGLIGENCE
### (KEVIN KNASEL, INDIVIDUALLY)

21. Plaintiff re-alleges paragraphs 1-20 as if the allegations had been fully restated herein.

22. SFW was engaged to prepare and file Mr. Knasel's individual tax returns and to advise him regarding estimated tax obligations on an annual basis beginning with the 2019 tax year.

23. In connection with that engagement, SFW was responsible for ensuring that all relevant income and business activities of Mr. were accurately reported.

24. First, SFW failed to properly calculate and communicate Mr. Knasel's quarterly estimated tax payments under the IRS "safe harbor" rules, which allow

5

high-income taxpayers to avoid penalties by paying either 110% of the prior year's liability or 90% of the current year's liability.

25. The IRS safe harbor rules for calculating quarterly estimated payments are common knowledge for any tax professional.

26. Because SFW did not provide accurate estimated tax amounts or guidance, Mr. Knasel unknowingly underpaid his quarterly tax obligations, and the IRS imposed substantial penalties and interest.

27. Second, despite clear knowledge of Mr. Knasel's move to Florida, SFW failed to update Mr. Knasel's mailing address from Missouri to Florida. As a result, Mr. Knasel was not automatically eligible for hurricane-related filing extensions available to Florida residents, which led to further penalties for late filing and late payment.

28. Third, SFW prepared the gift tax returns on behalf of Kevin K. and Susan M. Knasel, formally documenting to the Internal Revenue Service three distinct transfers of 10% nonvoting interest in Branson's Nantucket LLC (30% nonvoting interests in the aggregate) to irrevocable grantor trusts held for the benefit of Garrett Knasel, Maria Knasel, and Justin Knasel.

29. After failing to apply the discounts for lack of marketability and lack of control for estate tax purposes – each of which discounts are common

knowledge to a tax professional – SFW improperly reported the ownership percentages in Branson's Nantucket for the post-gift income tax periods.

30. As a result of not applying these valuation discounts, Mr. Knasel lost over $2,239,886 in future gift and estate tax credits (equating to $895,954.40 in additional tax upon the completion of any gratuitous transfer above the annual exclusion limit).

31. Fourth, during the preparation of Knasel's individual tax returns, SFW indicated that Mr. Knasel only owned one percent (1%) of Branson's Nantucket and three separate trusts held the remaining ninety-nine percent (99%) interest in Branson's Nantucket.

32. SFW prepared the gift tax returns whereby only a ten percent (10%) non-voting stock in Branson's Nantucket was gifted to each of the three trusts.

33. The non-voting stock holds no economic interests, such that Knasel would retain one hundred percent (100%) of the tax attributes derived from Branson's Nantucket on his personal tax return.

34. In preparing Branson's Nantucket ownership schedule, SFW indicated that Knasel held only a one percent (1%) ownership interest and therefore had only one percent (1%) of the basis otherwise attributable to his ownership.

35. Branson's Nantucket is an entity taxed under Subchapter S of the Internal Revenue Code.

36. The Internal Revenue Code provides that shareholder distributions from an entity taxed under Subchapter S of the Internal Revenue Code are only subject to income tax when the distribution is in excess of basis.

37. Knasel took distributions of $7,839,973 from Branson's Nantucket during 2022 and $20,218,470 during 2023.

38. Had Knasel's ownership been properly reported by SFW, Knasel's associated tax basis in Branson's Nantucket for 2022 would have been $28,779,069. A true and correct recalculation of Knasel's basis is attached hereto as **Exhibit "B."**

39. Had Knasel's ownership been properly reported by SFW, Knasel's associated tax basis in Branson's Nantucket for 2023 would have been $45,384,608. *See* Exhibit "B."

40. Had Knasel's ownership been properly reported by SFW, Knasel's distributions from Branson's Nantucket would not have been subject to income tax because his distributions would not exceed his basis.

41. Knasel's federal tax bracket was thirty-seven percent (37%) for 2022 and 2023.

42. As a result of SFW's failure to properly report ownership percentages on income tax returns, Knasel's distributions from Branson's Nantucket were subject to income tax for the 2022 and 2023 calendar years.

43. At his federal income tax rate, the tax payment associated with this error was $2,900,790 for 2022 and $7,480,834 for 2023.

44. Because those overpayments deprived Mr. Knasel of the ability to invest or otherwise utilize those funds, he incurred additional economic loss equal to at least $250,628 for the 2022 calendar year and $598,467 for the 2023 calendar year through the lost time value of money.

45. Because the 2022 and 2023 distribution amounts in excess of the underreported basis were taxed at the ordinary federal income tax rate of 37% rather than the capital gains income tax rate of 20% upon a sale event, which is a near certainty within the next year, SFW's failure to properly report ownership percentages caused Knasel to overpay income tax in the amount equal to 17% of his distribution in each of 2022 and 2023 (the "tax characterization issue").

46. For the 2022 and 2023 tax year, this tax characterization issue caused Knasel to overpay federal income tax on his distributions in the amounts of $1,332,795 and $3,437,139, respectively.

47. Finally, SFW failed to include the operations of Everglades Investment, LLC and BTM Marketing, LLC on Schedule C of Mr. Knasel's personal tax returns, despite ample evidence of their existence and activity.

48. Emails sent by multiple employees of Everglades Investment to SFW bore Everglades Investment, LLC signature blocks, and financial activity relating to both entities was apparent in Mr. Knasel's business portfolio, evinced by inclusion of W-2 wages on Mr. Knasel's individual income tax return. True and accurate copies of the foregoing emails are attached hereto as **Exhibit "C."**

49. Notwithstanding these facts, SFW never made the basic inquiry or included the entities in the filings.

50. As a direct consequence of this omission, Mr. Knasel's taxable income was overstated, causing him to overpay federal income taxes by approximately $482,005.00 across the 2022 and 2023 tax years.

51. Because those overpayments deprived Mr. Knasel of the ability to invest or otherwise utilize those funds, he incurred additional economic loss equal to at least $38,560.00 in lost time value of money.

52. After Knasel requested that SFW amend his 2022 tax return to account for these entities, SFW improperly calculated the qualified business income deduction under Internal Revenue Code Section 199A, which in turn caused

Knasel to incur an additional $1,300,000 in taxes payable and another $313,000 in associated interest.

53. SFW owed Mr. Knasel a duty to exercise reasonable care and professional competence in preparing his individual returns, advising him on estimated tax obligations, ensuring address changes were properly reflected, and accurately reporting all related entities' income, ownership, and operations.

54. Defendant breached its duty by failing to calculate quarterly estimated taxes pursuant to IRS rules; failing to update Mr. Knasel's address to Florida, thereby depriving him of hurricane filing extensions; failing to properly report Knasel's ownership percentage – and, by extension, his basis - in Branson's Nantucket; failing to include Everglades Investment, LLC and BTM Marketing LLC on his Schedule C filings notwithstanding obvious evidence of their activity, and miscalculating the qualified business income deduction under Internal Revenue Code Section 199A.

55. These breaches directly and proximately caused Mr. Knasel to incur significant penalties, interest, overpayments, and lost investment value. Had SFW performed its obligations with reasonable care, none of these damages would have been sustained.

56. Mr. Knasel has suffered damages including but not limited to $956,000.00 in penalties and interest for 2022 and 2023; $482,005.00 in overpaid

federal taxes due to omitted entities; $1,613,000 in additional taxes and interest due to improper calculations; $895,954.40 in future additional estate taxes due to the failure to apply standard discounts to the gift of nonvoting stock; $887,655.00 in lost time value of funds, and $4,769,934 relating to the tax characterization issue, for a total in excess of $9,604,548.41.

WHEREFORE, Plaintiff, KEVIN KNASEL, respectfully requests this Honorable Court enter judgment against the Defendant, SFW PARTNERS, LLC, for damages, costs of this suit, and all other relief that the Court deems proper.

        **BOATMAN RICCI**

*/s/ Stephen C. Schahrer*_____
**Stephen C. Schahrer, Esq.**
Fla. Bar No. 1010415
**Alexander Rabinowitz, Esq.**
Fla. Bar No. 1059394
3021 Airport-Pulling Rd. N., Suite 202
Naples, Florida 34105
Email:CourtFilings@boatmanricci.com
(239) 330-1494 – Telephone
*Attorneys for Plaintiff*